| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------x | Hearing Date: June 12, 2012<br>@ 10:00 a.m. |
| In re:<br><br>Colmar Realty LLC,<br><br>                      Debtor.<br>-------------------------------------------------x | CHAPTER 11<br><br>CASE NO. 11-49728-jf |

**DEBTOR'S OPPOSITION TO MOTION**
**TO CONVERT DEBTOR'S CASE**

Colmar Realty LLC ("Debtor"), by its attorneys, Rosenberg, Musso & Weiner, as its opposition to the motion of Flushing ("Flushing"), respectfully represents:

1. On November 18, 2011 ("Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the Bankruptcy Code. The Debtor has filed its schedules of assets and liabilities, and list of creditors and executory contracts required pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure. The Debtor has continued to manage and operate its business pursuant to sections 1107 and 1108 of the Bankruptcy Code. No committees, trustee, or examiner has been appointed.

2. The Debtor files this opposition to the motion of Flushing to convert the Debtor's Chapter 11 case to one under Chapter 7. Flushing fails to establish cause for conversion under the grounds enumerated in Section 1112(b)(4) or for any other reason.

3. Flushing details the Debtor's payments of post-petition adequate protection payments. Although some of the payments were late, what is admitted is that every payment was made through April 2012 and it is Flushing that refused to accept the May 2012 payment. The problems with the first payments were caused in large part because Chase initially agreed to open a DIP account for the Debtor, but then decided it did not want the Debtor as a customer and a new account had to be opened. Debtor's counsel spoke with the branch manager at Chase and verified

that Chase would close the DIP account and not permit the Debtor to maintain an account at Chase. The Debtor has the money to pay both the May and June payments. The Debtor's manager is prepared to testify that her office was advised by someone at Flushing that she could make the May payment on May 10, but when she attempted to do so, by bank check, Flushing refused the payment. The Debtor's principal is Wanda Conti, who is an elderly woman. Her daughter, Lori Conti Aranibar, manages the Debtor. Ms. Aranibar travels weekly between New York and Florida. She helps her husband operate a flooring business in New York and her children are in school in Florida. Further, she has had health issues this Spring. She is prepared to testify that the reason the payments were a few days late is because of her traveling, family, and health issues.

4. Because of the Debtor's making payments a few days late, Flushing invoked the default clause of the cash collateral agreement. There is no allegation that the Debtor mismanaged its affairs or that any of Flushing's cash collateral was used for any impermissible use. The Debtor is prepared to submit its bank records on or before the return date of this motion showing the use of all of the Debtor's income. The only disbursements made by the Debtor during May were Con Edison, $3062.50, the exterminator, $250, and the super $150. All of those were necessary and ordinary business expenses. Flushing fails to show that having another entity or a trustee manage the Debtor's property will protect it or any other creditor, but having a trustee or other entity would add layers of additional expense to the detriment of both the Debtor and its creditors.

5. The Debtor can confirm a plan of reorganization. Wanda Conti owns the property at 150-47 21st Avenue, Whitestone, New York and is in contract to sell that property for $710,000. The sale of that property is scheduled for on or about June 28, 2012, and after payment of the mortgage on the property and closing expenses, she will net approximately $180,000. She is prepared to put that money in escrow to be used for confirmation of the Debtor's plan. Wanda

Conti is the sole member of Lomar Realty LLC, which owns the property at 28-05 34th Avenue, Astoria, New York. Lomar has accepted a binder offer to purchase its property for $1,300,000 and expects a contract to be signed shortly. The buyer pre-qualified for a mortgage. After payment of the mortgage and closing expenses, it will net approximately $400,000. The Debtor submits that the ability of its principal to sell other property and use the money to reinstate the Debtor's mortgage with Flushing shows that the Debtor has a reasonable likelihood of rehabilitation. At this time, the Debtor does not need to show that a plan can be confirmed, only that it is reasonably likely and that there is no substantial or continuing loss to or diminution of the estate. Flushing does not allege that the Debtor management of its property has resulted in substantial or continuing loss to or diminution of the estate. The Debtor is prepared to continue to make payments to Flushing while this case is pending and to continue to hold the rest of its income in the DIP account.

6. Flushing complains about the delay in scheduling a hearing on the Debtor's disclosure statement, which will result in a delay in any confirmation of a plan. The Debtor submitted an order to schedule the hearing on its disclosure statement and the hearing date was set by the Court. The Debtor submits that it is making progress towards raising the money to confirm a plan and will be able to meet its proposed dates.

7. Flushing moves for conversion of the Debtor's case, which will result in the sale of the Debtor's property by a trustee. The Debtor submits that this relief is not necessary or appropriate at this time. The Debtor's plan of reorganization already provides for the sale by the Debtor of its property if the Debtor fails to reinstate its mortgage within ninety days of the effective date of the plan. An immediate sale will result in the Debtor losing its property now, with no possibility of rehabilitation. The Debtor submits that this is a harsh penalty for making payments a few days late. Other than Flushing, the only claim in this case was filed by Con Edison for approximately $27,000. Flushing is by far the major creditor in this case and would be the major

beneficiary of a conversion. The Debtor respects Flushing's position as the holder of the mortgage and respects Flushing's right to be paid. The Debtor submits that Flushing will be paid within a reasonable period of time, either through reinstatement of the loan or by sale of the property if the Debtor cannot reinstate. The Debtor submits that the extra layer of expense of a trustee, and of a property manager for the trustee, is not necessary in this case. The parade of horribles alleged by Flushing in the event of a dismissal is pure speculation and is not supported by the Debtor's management of its property and income during the Chapter 11 case.

8.   The Debtor and Debtor's counsel have learned that Flushing is marketing the note and mortgage. It is possible that within a short period of time, Flushing will no longer be a creditor in this case. The Debtor requests that this is another reason that Flushing's motion to convert should not be granted at this time. Conversion will end the Debtor's ability to go forward with its plan or to deal with its new mortgagee, should there be one.

9.   For all of the foregoing reasons, the Debtor submits that Flushing has not demonstrated cause to convert this case.

Wherefore, it is respectfully requested that this Court deny Amalgamated's motion and grant such other relief as is just and proper.

Dated:  Brooklyn, New York
         June 8, 2012

ROSENBERG, MUSSO & WEINER, LLP
Attorneys for Debtor


By:   /s/
      Bruce Weiner (BW 4730)
      26 Court Street, Suite 2211
      Brooklyn, New York 11242
      (718) 855-6840